| | | |
|---|---|---|
| | ) | |
| TODD BERMAN, | ) | |
| | ) | |
| Plaintiff | ) | No. 1:21-cv-63 |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA HIGHER EDUCATION | ) | |
| ASSISTANCE AGENCY d/b/a FedLoan | ) | |
| Servicing, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff TODD BERMAN, through the undersigned counsel, Jonathan A. Vogel, who submits this Complaint alleging claims against Defendant PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a FedLoan Servicing ("PHEAA"), and states as follows:

## INTRODUCTION

1

This Complaint alleges several violations of North Carolina law relating to a false representation made by Defendant PHEAA to Plaintiff Todd Berman, a United States Army veteran. PHEAA's false representation had the effect of denying Mr. Berman the chance to avail himself of the opportunity to have his federal student loans fully discharged under the Public Service Loan Forgiveness ("PSLF") program. PHEAA acted in an unfair and deceptive, as well as negligent, manner with respect to the circumstances of PHEAA's false representation that Mr. Berman's nonprofit employer was not a "qualifying employer" under the PSLF program.

PHEAA's false representation also forms the basis of Mr. Berman's breach of contract claims. Specifically, Mr. Berman, as a third-party beneficiary, is entitled to recover for breach of PHEAA's loan servicing agreement with the U.S. Department of Education ("Department"), and Mr. Berman is also entitled to recover for breach of his promissory notes with the Department because PHEAA, as the servicer of the Department's loans to Mr. Berman, is the partial assignee of those notes.

## PARTIES

1.   Plaintiff Todd Berman is a United States Army veteran who served in the Judge Advocate General's Corps following college and law school. Mr. Berman was at all times relevant to this Complaint a resident of Durham County, North Carolina.

2.   Defendant PHEAA, which is a nonprofit corporation incorporated under the laws of the Commonwealth of Pennsylvania with its headquarters in Harrisburg, Pennsylvania, operates FedLoan Servicing, the exclusive servicer of student loans made by the Department that are in the PSLF program.

## JURISDICTON AND VENUE

3.   This Court has personal jurisdiction over Plaintiff Todd Berman because Mr. Berman is a resident of the State of North Carolina and has certain minimum contacts with the State of North Carolina to comport with the Due Process Clause.

4.   The Court has personal jurisdiction over Defendant PHEAA because North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, is satisfied, and PHEAA has certain minimum

3

contacts with the State of North Carolina to comport with the Due Process Clause.

5. This is an action claiming financial injury to Mr. Berman arising out of acts of unfairness, deception, and negligence committed by PHEAA within North Carolina.

6. This action arises out of a promise made by PHEAA to the Department for Mr. Berman's benefit to perform student loan servicing, including the performance of student loan servicing within North Carolina.

7. As the exclusive servicer of student loans made by the Department that are in the PSLF program, including all such loans made to borrowers residing in North Carolina, PHEAA has sufficient minimum contacts with North Carolina.

8. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff Todd Berman and Defendant PHEAA, and the amount in controversy is met.

9. As a domicile of North Carolina, Mr. Berman is a citizen of North Carolina. As a corporation incorporated in Pennsylvania with its principal place of business in Pennsylvania, PHEAA is a citizen of Pennsylvania.

4

10.  The amount in controversy exceeds $75,000.

11.  Venue is properly placed in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the district. Defendant PHEAA's false representation that forms the primary basis of the claims in this case was stated within a letter sent to Plaintiff Todd Berman's home in Durham County, North Carolina.

## FACTUAL ALLEGATIONS

### The PSLF Program

12.  The PSLF program is a federal program that was enacted in 2007 to forgive the remaining balance on a federal student loan borrower's "eligible loans" after the borrower has made 120 "qualifying monthly repayments" under a "qualifying repayment plan" while working full-time for a "qualifying employer," such as a government agency or nonprofit organization.

13.  For all federal student loans made by the Department, the Department assigns a servicer to handle, on behalf of the Department, the billing, collection, and

5

other services of federal student loans at no cost to the borrower. The servicer works with the borrower on repayment options and the availability of loan forgiveness and otherwise assists the borrower with tasks related to the borrower's federal student loans.

14. A borrower applies for the opportunity to have the borrower's federal student loans discharged under the PSLF program by submitting an Employment Certification Form ("ECF") to the Department's exclusive servicer of federal student loans that are in the PSLF program (hereinafter referred to as "PSLF Servicer").

15. If the PSLF Servicer determines that the borrower has "eligible loans" and a "qualifying employer" under the PSLF program, then all of the borrower's "eligible loans" under the PSLF program, and any other federal student loans that are held by the Department, are transferred to the PSLF Servicer to service those loans.

## PHEAA's Involvement in the PSLF Program

16. On or about June 17, 2009, PHEAA entered into a student loan servicing agreement with the Department to

6

provide servicing for federal student loans (hereinafter referred to as "Servicing Agreement").

17. The Servicing Agreement was subsequently extended effective September 1, 2014 and then again in December 2019, and it is currently in effect.

18. At all times relevant to this Complaint, FedLoan Servicing, which is operated by PHEAA, was designated by the Department to be the PSLF Servicer.

### Mr. Berman's Student Loans and PSLF Eligibility

19. On or about December 20, 2010, Mr. Berman obtained two Direct Consolidation Loans from the Department in the amounts of $38,307.02 and $109,478.49, totaling $147,785.51 in original principal balance (hereinafter referred to as "Student Loans") that were secured by promissory notes between Mr. Berman and the Department (hereinafter referred to as "Promissory Notes").

20. The Student Loans were "eligible loans" under the PSLF program.

21. From on or about February 6, 2011 through on or about May 18, 2018, Mr. Berman was employed full-time by a "qualifying employer" under the PSLF program.

22.    From on or about February 6, 2011 through on or about March 22, 2015, Mr. Berman was employed by the United States Army.

23.    From on or about January 12, 2015 through on or about May 18, 2018, Mr. Berman was employed by Blue Cross and Blue Shield of North Carolina ("Blue Cross NC"), a nonprofit corporation.

24.  From on or about March 7, 2011 through on or about March 7, 2018, Mr. Berman made monthly payments pursuant to the Income-Based Repayment Plan, which is a "qualifying repayment plan" under the PSLF program.

25.  From on or about March 7, 2011 through on or about March 7, 2018, Mr. Berman made "qualifying monthly payments" under the PSLF program.

## PHEAA Definitively Confirmed Mr. Berman's Qualifying Employment with the U.S. Army and Blue Cross NC

26.  On or about March 24, 2015, Mr. Berman submitted an ECF to the PSLF Servicer to confirm that the U.S. Army was an "eligible employer" and to obtain the total number of "qualifying monthly payments" that he had made while he was employed by the U.S. Army.

27.  In a letter dated April 25, 2015, FedLoan Servicing definitively confirmed that Mr Berman had "eligible loans" and a "qualifying employer" under the PSLF program with a qualifying employment begin date of February 6, 2011 and a qualifying employment end date of March 22, 2015.

28.  On or about April 25, 2015, Mr. Berman's federal loans were transferred for servicing to FedLoan Servicing.

29.  By the time Mr. Berman left the U.S. Army on or about March 22, 2015, he had compiled approximately 45 months of "qualifying monthly payments" toward the 120 months needed to obtain complete loan forgiveness in the PSLF program.

30.  Since his loans were in the PSLF program and he knew that, by the time he left the U.S. Army, he would have made nearly half of the 120 "qualifying monthly payments" needed to obtain complete loan forgiveness in the PSLF program, Mr. Berman placed a heavy emphasis on obtaining post-U.S. Army employment with a "qualified employer" under the PSLF program.

31.  In late 2014, in preparation to leave the U.S. Army in early 2015, Mr. Berman interviewed for positions with Blue Cross NC, a nonprofit organization, and with SAS Institute Inc., a for-profit corporation. Mr. Berman also had a few leads for jobs with law firms.

32.  In late 2014, Mr. Berman called FedLoan Servicing to inquire whether Blue Cross NC was a "qualifying employer" under the PSLF program. Mr. Berman was informed over the telephone by FedLoan Servicing that Blue Cross NC was a "qualifying employer."

33.  In reliance upon FedLoan Servicing's representation to Mr. Berman that Blue Cross NC was a "qualifying employer," Mr. Berman withdrew from the hiring process at SAS Institute Inc. and accepted a position with Blue Cross NC, beginning January 12, 2015.

34.  On or about November 17, 2016, while he was employed by Blue Cross NC, Mr. Berman submitted an ECF to FedLoan Servicing to obtain an updated count on his "qualifying monthly payments."

35.  In a letter dated December 6, 2016, FedLoan Servicing definitively confirmed that Blue Cross NC was a

"qualifying employer" with a qualifying employment begin date of January 12, 2015 and, as of that time, a qualifying employment end date of November 17, 2016.

36. In a second letter dated December 6, 2016, FedLoan Servicing informed Mr. Berman that, between January 12, 2015 and November 17, 2016, Mr. Berman had earned 11 "qualifying monthly payments."

## PHEAA's False Representation that Blue Cross NC Was Not a "Qualifying Employer"

37. In or about November 2017, Mr. Berman was preparing to submit another ECF to FedLoan Servicing to obtain an updated count on his "qualifying monthly payments" when he read that FedLoan Servicing had reversed its designation of the American Bar Association ("ABA"), a nonprofit organization, as a "qualifying employer" under the PSLF program and had revoked borrowers' "qualifying monthly payments" from the calculation under the PSLF program if they were ABA employees.

38. Out of a concern that FedLoan Servicing might also reverse its designation of Blue Cross NC as a "qualifying employer," in or about November 2017, Mr. Berman called

FedLoan Servicing two times, and FedLoan Servicing confirmed both times to Mr. Berman that Blue Cross NC was a "qualifying employer."

39. In or about January 2018, Mr. Berman called and emailed FedLoan Servicing several times for the purpose of receiving a definitive determination as to whether Blue Cross NC was a "qualifying employer," and he received different answers every time he called.

40. In or about January 2018, as a result of the mixed messages he was receiving from FedLoan Servicing as to whether Blue Cross NC was a "qualifying employer" and as to whether the "qualifying monthly payments" that he had already made were revoked, Mr. Berman began to explore higher-paying job opportunities in the private sector.

41. In or about January 2018, Mr. Berman was offered a job in the private sector with ABC Phones of North Carolina, Inc. d/b/a Victra, but he turned it down because he had not received a definitive determination from FedLoan Servicing that Blue Cross NC was not a "qualifying employer" or that his "qualifying monthly payments" would be revoked, and Mr. Berman held out hope that FedLoan

Servicing would definitively conclude that Blue Cross NC was a "qualifying employer" and that he could retain the "qualifying monthly payments" that he had already made.

42. In or about January 2018, Mr. Berman sent a complaint to the PHEAA Office of Consumer Advocacy about FedLoan Servicing's mixed messages as to whether Blue Cross NC was a "qualifying employer" and whether he could retain the "qualifying monthly payments" that he had already made.

43. On January 26, 2018, "Sam" from the PHEAA Office of Consumer Advocacy responded to Mr. Berman's complaint via email by informing him that, as of November 16, 2017, FedLoan Servicing determined that Blue Cross NC was "no longer a qualifying employer." The email from PHEAA further stated that Mr. Berman would retain the number of "qualifying monthly payments" that he had already made through November 17, 2016 and suggested that Mr. Berman submit a new ECF to obtain an updated count of "qualified monthly payments" that he earned between November 18, 2016 and November 16, 2017.

44. On or about January 26, 2018, Mr. Berman submitted an ECF to obtain an updated count of his "qualifying monthly payments."

45. On or about February 5, 2018, Mr. Berman wrote to his senator in the U.S. Senate, Senator Thom Tillis, about FedLoan Servicing's mixed messages as to whether Blue Cross NC was a "qualifying employer" and whether he could retain the "qualifying monthly payments" that he had already made.

46. In a letter dated February 14, 2018, FedLoan Servicing informed Mr. Berman that he did not earn any "qualifying monthly payments" after November 17, 2016 during the time he was employed by Blue Cross NC.

47. In a letter dated February 20, 2018, the Department, through Helena Myers-Wright, Student Loan Customer Support Manager - Federal Student Aid, responded to Senator Thom Tillis' inquiry about Mr. Berman and the mixed messages from FedLoan Servicing as to whether Blue Cross NC was a "qualifying employer" and whether he could retain the "qualifying monthly payments" that he had already made. Ms. Myers-Wright informed Senator Tillis, "Mr. Berman's ECF submitted from January 12, 2015 through

14

January 23, 2018 is currently under review." Ms. Myers-
Wright further stated that FedLoan Servicing will respond
to Mr. Berman with a determination once the review is
completed.

48. In a letter dated March 20, 2018, FedLoan
Servicing definitively informed Mr. Berman that Blue Cross
NC was not a "qualifying employer." FedLoan Servicing
stated it had determined that its December 6, 2016 letter
to Mr. Berman, which designated Blue Cross NC as a
"qualifying employer" under the PSLF program, "was issued
in error."

49. The March 20, 2018 letter from FedLoan Servicing
further stated that it was "reversing its approval of the
periods of employment associated with [Blue Cross NC] and
revoking credit for any payments made during periods of
employment associated with [Blue Cross NC]," meaning that
FedLoan Servicing was retroactively eliminating the
"qualified monthly payments" Mr. Berman earned while
employed by Blue Cross NC.

**Mr. Berman's Reliance Upon PHEAA's Definitive Determination**

50.  In reliance upon FedLoan Servicing's definitive determination on March 20, 2018 that Blue Cross NC was not a "qualifying employer" and the consequence of losing credit for all of the "qualifying monthly payments" made over the course of approximately three years while he was employed by Blue Cross NC, Mr. Berman decided to leave Blue Cross NC and either work for the government or a nonprofit organization that would be considered by FedLoan Servicing to be a "qualifying employer" or obtain a higher-paying job in the private sector.

51.  In or about April 2018, Mr. Berman decided to obtain a higher-paying job in the private sector and changed his repayment plan from the Income-Based Repayment Plan, which was a "qualifying repayment plan," to the Standard Repayment Plan for Direct Consolidation Loans, which was not a "qualifying repayment plan," beginning with his payment on April 7, 2018. If FedLoan Servicing had not reversed its designation of Blue Cross NC as a "qualifying employer," then Mr. Berman would not have changed repayment plans.

52.  In or about May 2018, Mr. Berman accepted a job in the private sector with ABC Phones of North Carolina, Inc. d/b/a Victra, which was not a "qualifying employer," and Mr. Berman began employment there on or about May 21, 2018. If FedLoan Servicing had not reversed its designation of Blue Cross NC as a "qualifying employer," then Mr. Berman would not have changed employers.

53.  On or about November 6, 2018, Mr. Berman consolidated his Direct Consolidation Loans in the amount of $169,684.40 into a private loan, which was not an "eligible loan," made by and serviced by Earnest Operations LLC d/b/a Earnest Loans. If FedLoan Servicing had not reversed its designation of Blue Cross NC as a "qualifying employer," then Mr. Berman would not have consolidated his Direct Consolidation Loans into a private loan.

**PHEAA's Reversal of its Definitive Determination that Blue Cross NC Was Not a "Qualifying Employer"**

54.  In a letter dated November 1, 2019 – nearly one year to the day after Mr. Berman consolidated his Direct Consolidation Loans into a private loan – FedLoan Servicing informed Mr. Berman that its March 20, 2018 letter to Mr.

17

Berman, which reversed the determination in its prior December 6, 2016 letter designating Blue Cross NC as a "qualifying employer," was itself "in error" because Blue Cross NC was, in fact, a "qualifying employer."

55. The November 1, 2019 letter from FedLoan Servicing further stated that FedLoan Servicing was "reversing our previous assessment of the periods of employment associated with [Blue Cross NC] and we will evaluate any payments made during such periods of employment as potentially qualifying under the PSLF eligibility criteria on the back of this letter."

56. FedLoan Servicing's reversal on November 1, 2019 of its prior reversal on March 20, 2018 was too late to benefit Mr. Berman. By consolidating his Direct Consolidation Loans into a private loan on November 6, 2018, Mr. Berman could no longer obtain loan forgiveness under the PSLF program, even if he went back to working for a "qualifying employer" and switched back to a "qualifying repayment plan," because he no longer had a federal loan, let alone an "eligible loan," for the Department to forgive.

## COUNT ONE - VIOLATION OF NORTH CAROLINA
## UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. Gen. Stat. §
## 75-1.1

57. Mr. Berman repeats and re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 56, inclusive, as though fully set forth herein.

58. PHEAA engaged in unfair or deceptive acts or practices in or affecting commerce and proximately caused injury to Mr. Berman in connection with the circumstances of FedLoan Servicing's false representation that Blue Cross NC was not a "qualifying employer" under the PSLF program and that, as a result, Mr. Berman lost credit for the "qualifying monthly payments" he had made while employed by Blue Cross NC.

### PHEAA Engaged in Deceptive Acts or Practices

59. When FedLoan Servicing sent Mr. Berman the March 20, 2018 letter definitively stating that FedLoan Servicing had reversed its December 6, 2016 determination that Blue Cross NC was a "qualifying employer," PHEAA knew that Blue Cross NC was indeed a "qualifying employer" and, therefore, deceived Mr. Berman.

60. Upon information and belief, PHEAA knew at the time that it sent the March 20, 2018 letter to Mr. Berman that the federal regulation governing the PSLF program, 34 C.F.R. § 685.219, required the borrower to be "employed full-time by a public service organization" and defined that term as including a private, nonprofit organization that provides services in the area of "public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics)."

61. PHEAA knew at the time that it sent the March 20, 2018 letter to Mr. Berman that Blue Cross NC was indeed a private, nonprofit organization that provides services in the area of "public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics)" because, on or about November 17, 2016, Mr. Berman sent

Case 1:21-cv-00063-LCB-JLW   Document 1   Filed 01/21/21   Page 20 of 39

FedLoan Servicing an ECF with a certification from Blue Cross NC that the employer met that regulatory definition. Indeed, in its response letter dated December 6, 2016, FedLoan Servicing confirmed to Mr. Berman that Blue Cross NC was a "qualifying employer."

62. Upon information and belief, FedLoan Servicing had also confirmed in writing to other borrowers employed by Blue Cross NC that Blue Cross NC was a "qualifying employer."

63. Between December 6, 2016 when FedLoan Servicing confirmed to Mr. Berman that Blue Cross NC was a "qualifying employer" and March 20, 2018 when FedLoan Servicing reversed that determination, the federal regulation governing the PSLF program, 34 C.F.R. § 685.219, remained unchanged, and, upon information and belief, PHEAA knew that the federal regulation governing the PSLF program, 34 C.F.R. § 685.219, remained unchanged.

64. FedLoan Servicing's false representation in its March 20, 2018 letter that Blue Cross NC was not a "qualifying employer" deceived Mr. Berman into thinking that Blue Cross NC was not a "qualifying employer" and that

his "qualifying monthly payments" during his employment with Blue Cross NC were revoked.

## PHEAA Engaged in Unfair Acts or Practices

65. FedLoan Servicing's treatment of Mr. Berman in connection with the circumstances of its false representation that Blue Cross NC was not a "qualifying employer" was an unfair practice because it offended established public policy and was otherwise immoral, unethical, oppressive, unscrupulous, or substantially injurious to Mr. Berman.

66. Aside from deceiving Mr. Berman into believing FedLoan Servicing's false representation that Blue Cross NC was not a "qualifying employer" and that his "qualifying monthly payments" were revoked, FedLoan Servicing engaged in an offensive, immoral, unethical, oppressive, and unscrupulous practice of repeatedly providing Mr. Berman with different answers to his question asking whether Blue Cross NC was a "qualifying employer" and whether Mr. Berman would be able to retain the "qualifying monthly payments" that he had already made.

67. FedLoan Servicing engaged in this practice of sending Mr. Berman different answers despite knowing that Mr. Berman needed to definitively and quickly know whether Blue Cross was a "qualifying employer" in order to make prudent, financial decisions concerning his Student Loans that impact his family finances and planning.

## PHEAA's Acts or Practices were in or Affecting Commerce and Proximately Caused Injury to Mr. Berman

68. FedLoan Servicing's acts or practices of working with Mr. Berman on the availability of loan forgiveness under the PSLF program affected commerce because it constituted the exchange of commercial services on a large scale, namely, the servicing of Mr. Berman's Student Loans.

69. FedLoan Servicing's acts or practices proximately caused injury to Mr. Berman because, in reliance upon FedLoan Servicing's false representation on March 20, 2018 that Blue Cross NC was not a "qualifying employer" and that FedLoan Servicing must revoke his "qualified monthly payments" while he was employed by Blue Cross NC, Mr. Berman, in or about April 2018 through in or about November 2018, took steps to cease participation in the PSLF program

in order to achieve the next best financial result to having his federal loans completely forgiven sometime in 2021 after making 120 "qualifying monthly payments."

70. Specifically, Mr. Berman changed his repayment plan to a repayment plan that was not a "qualifying repayment plan" under the PSLF program, and he changed his employer to an employer that was not a "qualifying employer" under the PSLF program so that he could earn a higher income and pay more toward the principal on his federal loans. Even more, Mr. Berman consolidated his Direct Consolidation Loans into a private loan, which was not an "eligible loan" under the PSLF program, so that he could take advantage of the historically low interest rates.

71. If FedLoan Servicing had not acted with deception and unfairness by making false representation, then Mr. Berman's federal loans would have been completely forgiven sometime in 2021 after making 120 "qualifying monthly payments" because he would have remained employed by Blue Cross with loans in the Income-Based Repayment Plan, and he

would not have consolidated his Direct Consolidation Loans into a private loan.

72. Mr. Berman would have saved tens or hundreds of thousands of dollars in student loan payments if he had remained in the PSLF program and obtained complete loan forgiveness sometime in 2021 after making 120 "qualifying monthly payments."

## COUNT TWO – NEGLIGENT MISREPRESENTATION

73. Plaintiffs repeat and re-allege and incorporate by reference the allegations set forth in Paragraphs 1 through 56, inclusive, as though fully set forth herein.

74. PHEAA made a false representation to Mr. Berman upon which Mr. Berman relied to his detriment, and the false representation was prepared by FedLoan Servicing, which owed Mr. Berman a duty of care, in connection with FedLoan Servicing's false representation that Blue Cross NC was not a "qualifying employer" under the PSLF program and that, as a result, Mr. Berman lost credit for the "qualifying monthly payments" he had made while employed by Blue Cross NC.

## **PHEAA Prepared and Made a False Representation to Mr. Berman**

75.  When FedLoan Servicing prepared and sent Mr. Berman the March 20, 2018 letter definitively stating that FedLoan Servicing had reversed its December 6, 2016 determination that Blue Cross NC was a "qualifying employer," PHEAA knew that Blue Cross NC was indeed a "qualifying employer" and, therefore, made a false representation to Mr. Berman.

76.  Upon information and belief, FedLoan Servicing knew at the time that it sent the March 20, 2018 letter to Mr. Berman that the federal regulation governing the PSLF program, 34 C.F.R. § 685.219, required the borrower to be "employed full-time by a public service organization" and defined that term as including a private, nonprofit organization that provides services in the area of "public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics)."

77. PHEAA knew at the time that it sent the March 20, 2018 letter to Mr. Berman that Blue Cross NC was indeed a private, nonprofit organization that provides services in the area of "public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics)" because, on or about November 17, 2016, Mr. Berman sent FedLoan Servicing an ECF with a certification from Blue Cross NC that the employer met that regulatory definition. Indeed, in its response letter dated December 6, 2016, FedLoan Servicing confirmed to Mr. Berman that Blue Cross NC was a "qualifying employer."

78. Upon information and belief, FedLoan Servicing had also confirmed in writing to other borrowers employed by Blue Cross NC that Blue Cross NC was a "qualifying employer."

79. Between December 6, 2016 when FedLoan Servicing confirmed to Mr. Berman that Blue Cross NC was a "qualifying employer" and March 20, 2018 when FedLoan

Servicing reversed that determination, the federal regulation governing the PSLF program, 34 C.F.R. § 685.219, remained unchanged, and, upon information and belief, FedLoan Servicing knew that the federal regulation governing the PSLF program, 34 C.F.R. § 685.219, remained unchanged.

## Mr. Berman Relied Upon PHEAA's False Representation to his Detriment

80. Mr. Berman relied to his detriment upon FedLoan Servicing's false representation in its March 20, 2018 letter that Blue Cross NC was not a "qualifying employer" and that his "qualifying monthly payments" during his employment with Blue Cross NC were revoked.

81. In reliance upon FedLoan Servicing's false representation on March 20, 2018 that Blue Cross NC was not a "qualifying employer" and that his "qualifying monthly payments" during his employment with Blue Cross NC were revoked, Mr. Berman, in or about April 2018 through in or about November 2018, took steps to cease participation in the PSLF program in order to achieve the next best financial result to having his federal loans completely

28

forgiven sometime in 2021 after making 120 "qualifying monthly payments."

82. Specifically, Mr. Berman changed his repayment plan to a repayment plan that was not a "qualifying repayment plan" under the PSLF program, and he changed his employer to an employer that was not a "qualifying employer" under the PSLF program so that he could earn a higher income and pay more toward the principal on his federal loans. Even more, Mr. Berman consolidated his Direct Consolidation Loans into a private loan, which was not an "eligible loan" under the PSLF program, so that he could take advantage of the historically low interest rates.

83. If FedLoan Servicing had not made the false representation, then Mr. Berman's federal loans would have been completely forgiven sometime in 2021 after making 120 "qualifying monthly payments" because he would have remained employed by Blue Cross with loans in the Income-Based Repayment Plan, and he would not have consolidated his Direct Consolidation Loans into a private loan.

84.  Mr. Berman would have saved tens or hundreds of
thousands of dollars in student loan payments if he had
remained in the PSLF program and obtained complete loan
forgiveness sometime in 2021 after making 120 "qualifying
monthly payments."

## PHEAA Owed Mr. Berman a Duty of Care

85.  As the PSLF Servicer responsible for the servicing
of federal student loan borrowers nationwide who
participate in the PSLF program in hopes of having their
federal student loans completely forgiven after making 120
"qualifying monthly payments," FedLoan Servicing owed those
borrowers, including Mr. Berman, a duty of care with
respect to its servicing acts and practices.

86.  FedLoan Servicing owed Mr. Berman a duty of care
in tort that arose out of the parties' contractual
relationship in connection with the Servicing Agreement and
the Promissory Note because FedLoan Servicing, as a party
(directly or as an assignee) to each of those contracts,
was obligated to perform those contracts with ordinary care
toward Mr. Berman who was a third-party beneficiary of the
Servicing Agreement and a party to the Promissory Note.

87.  In the alternative, if the parties do not have a contractual relationship in connection with the Servicing Agreement and the Promissory Note, then FedLoan Servicing owed Mr. Berman a duty of care to conform its conduct toward Mr. Berman with a specific standard of reasonableness.

## COUNT THREE – BREACH OF CONTRACT (SERVICING AGREEMENT)

88.  Plaintiffs repeat and re-allege and incorporate by reference the allegations set forth in Paragraphs 1 through 56, inclusive, as though fully set forth herein.

89.  The Servicing Agreement is a valid contract between the Department and PHEAA; the contract was entered into for Mr. Berman's direct, and not incidental benefit; and PHEAA breached the terms of the contract.

90.  The Servicing Agreement obligates PHEAA, in exchange for payment from the Department, to conduct collection activities and otherwise perform student loan servicing activities for borrowers with federal student loans made by the Department.

91.  The Servicing Agreement specifically requires PHEAA to comply with all federal statutory and regulatory

requirements, including the regulation governing the PSLF program, which is found at 34 C.F.R. § 685.219.

92.  By expressly referencing the requirement that PHEAA comply with the federal regulation governing the PSLF program, the Department and PHEAA anticipated in the Servicing Agreement that borrowers, like Mr. Berman, would avail themselves of the PSLF program and, therefore, receive the servicing activities performed by PHEAA in compliance with the governing federal regulation. Thus, Mr. Berman's interests were contemplated by both parties to the Servicing Agreement, and both parties intended that borrowers, like Mr. Berman, would receive a benefit from PHEAA under the Servicing Agreement that might be enforced in the courts.

93.  FedLoan Servicing's false representation to Mr. Berman in its March 20, 2018 letter that Blue Cross NC was not a "qualifying employer" and that his "qualifying monthly payments" during his employment with Blue Cross NC were revoked constituted a breach of the Servicing Agreement by PHEAA because it contradicted the plain

language of the governing federal regulation with which
PHEAA promised in the Servicing Agreement to comply.

94. PHEAA's breach of the Servicing Agreement was
material because it thwarted Mr. Berman's ability to avail
himself of the PSLF program and obtain complete loan
forgiveness.

95. In reliance upon FedLoan Servicing's false
representation on March 20, 2018 that Blue Cross NC was not
a "qualifying employer" and that his "qualifying monthly
payments" during his employment with Blue Cross NC were
revoked, Mr. Berman, in or about April 2018 through in or
about November 2018, took steps to cease participation in
the PSLF program in order to achieve the next best
financial result to having his federal loans completely
forgiven sometime in 2021 after making 120 "qualifying
monthly payments."

96. Specifically, Mr. Berman changed his repayment
plan to a repayment plan that was not a "qualifying
repayment plan" under the PSLF program, and he changed his
employer to an employer that was not a "qualifying
employer" under the PSLF program so that he could earn a

higher income and pay more toward the principal on his federal loans. Even more, Mr. Berman consolidated his Direct Consolidation Loans into a private loan, which was not an "eligible loan" under the PSLF program, so that he could take advantage of the historically low interest rates.

97. If FedLoan Servicing had not made the false representation, then Mr. Berman's federal loans would have been completely forgiven sometime in 2021 after making 120 "qualifying monthly payments" because he would have remained employed by Blue Cross with loans in the Income-Based Repayment Plan, and he would not have consolidated his Direct Consolidation Loans into a private loan.

98. Mr. Berman would have saved tens or hundreds of thousands of dollars in student loan payments if he had remained in the PSLF program and obtained complete loan forgiveness sometime in 2021 after making 120 "qualifying monthly payments."

## COUNT FOUR – BREACH OF CONTRACT (PROMISSORY NOTES)

99. Plaintiffs repeat and re-allege and incorporate by reference the allegations set forth in Paragraphs 1 through 56, inclusive, as though fully set forth herein.

100. The Promissory Notes are valid contracts between the Department and Mr. Berman; the Department partially assigned the Promissory Notes to PHEAA, and PHEAA accepted the duty, to service Mr. Berman's Student Loans; and PHEAA breached the terms of the Promissory Notes.

101. The Promissory Notes secured Mr. Berman's Direct Consolidation Loans and obligated the Department, in exchange for payment from Mr. Berman, to extend Student Loans to Mr. Berman and to conduct collection activities and otherwise perform student loan servicing activities.

102. By virtue of the Servicing Agreement, the Department partially assigned to PHEAA, and PHEAA accepted, the obligation in the Promissory Notes to conduct collection activities and otherwise perform student loan servicing activities for Mr. Berman's Student Loans.

103. The Promissory Notes specifically require PHEAA, as partial assignee, to comply with all federal statutory and regulatory requirements, including the regulation

35

governing the PSLF program, which is found at 34 C.F.R. § 685.219.

104. FedLoan Servicing's false representation to Mr. Berman in its March 20, 2018 letter that Blue Cross NC was not a "qualifying employer" and that his "qualifying monthly payments" during his employment with Blue Cross NC were revoked constituted a breach of the Promissory Notes by PHEAA because it contradicted the plain language of the governing federal regulation with which PHEAA promised in the Promissory Notes to comply.

105. PHEAA's breach of the Promissory Notes was material because it thwarted Mr. Berman's ability to avail himself of the PSLF program and obtain complete loan forgiveness.

106. In reliance upon FedLoan Servicing's false representation on March 20, 2018 that Blue Cross NC was not a "qualifying employer" and that his "qualifying monthly payments" during his employment with Blue Cross NC were revoked, Mr. Berman, in or about April 2018 through in or about November 2018, took steps to cease participation in the PSLF program in order to achieve the next best

financial result to having his federal loans completely forgiven sometime in 2021 after making 120 "qualifying monthly payments."

107. Specifically, Mr. Berman changed his repayment plan to a repayment plan that was not a "qualifying repayment plan" under the PSLF program, and he changed his employer to an employer that was not a "qualifying employer" under the PSLF program so that he could earn a higher income and pay more toward the principal on his federal loans. Even more, Mr. Berman consolidated his Direct Consolidation Loans into a private loan, which was not an "eligible loan" under the PSLF program, so that he could take advantage of the historically low interest rates.

108. If FedLoan Servicing had not made the false representation, then Mr. Berman's federal loans would have been completely forgiven sometime in 2021 after making 120 "qualifying monthly payments" because he would have remained employed by Blue Cross with loans in the Income-Based Repayment Plan, and he would not have consolidated his Direct Consolidation Loans into a private loan.

109. Mr. Berman would have saved tens or hundreds of thousands of dollars in student loan payments if he had remained in the PSLF program and obtained complete loan forgiveness sometime in 2021 after making 120 "qualifying monthly payments."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests a trial by jury and respectfully requests judgment against Defendant as follows:

1. Compensatory damages exceeding $75,000 and trebled as to Count One, in an amount to be proven at trial;
2. Liquidated damages and interest, in an amount to be proven at trial;
3. Punitive damages, in an amount to be proven at trial;
4. Costs of this action, including attorneys' fees; and
5. Such other relief that this Court deems just and proper.

Respectfully submitted,

VOGEL LAW FIRM PLLC

*/s/ Jonathan A. Vogel*

Jonathan A. Vogel

NC Bar No. 34266

*Counsel for Plaintiff*

6000 Fairview Road

South Park Towers, Suite 1200

Charlotte, NC 28210

Telephone:704.552.3750

Facsimile:704.552.3705

jonathan.vogel@vogelpllc.com