IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TODD BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 1:21CV63 |
| PENNSYLVANIA HIGHER EDUCATION | ) |
| ASSISTANCE AGENCY d/b/a | ) |
| FEDLOAN SERVICING, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (ECF No. 8.) Plaintiff alleges that Defendant, a student loan servicer, violated North Carolina law by falsely telling him that he was ineligible for loan forgiveness under the Public Service Loan Forgiveness ("PSLF") program. (ECF No. 1.) Plaintiff brings claims for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, negligent misrepresentation, and breach of contract. (*Id.* ¶¶ 57–109.) For the reasons stated herein, Defendant's motion will be denied.

**I.   BACKGROUND**

This suit involves the Public Service Loan Forgiveness ("PSLF") program. The program requires the U.S. Secretary of Education to "cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan not in default" for student loan borrowers "employed in a public service job" who make 120 qualifying payments.  20 U.S.C.

1

§ 1087e(m)(1); 34 C.F.R. § 685.219. Public service jobs are jobs with a "public service organization," meaning government organizations, 501(c)(3) organizations, and certain other not-for-profit organizations that provide specified "public services," to include "military service" and "public health," among others. 34 C.F.R. § 685.219(b). A borrower may apply for qualification annually or upon completion of all 120 qualifying payments by submitting an Employment Certification Form ("ECF"), which allows the borrower and his employer to provide the necessary documents to determine his eligibility for loan forgiveness. Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 73 Fed. Reg. 63232, 63241–42 (Oct. 23, 2008).

According to Plaintiff's Complaint, Defendant is a private, nonprofit corporation and the exclusive servicer of student loans made by the Department of Education that are in the PSLF program. (ECF No. 1 ¶ 2.) Pursuant to a Servicing Agreement between the Department and Defendant, Defendant handles billing, collection, and other services of federal student loans. (*Id.* ¶¶ 13, 16; ECF No. 8-2.) Defendant also collects and administers borrower ECF applications. (ECF No. 1 ¶ 14.)

Plaintiff alleges he obtained two Direct Consolidation Loans from the U.S. Department of Education on December 20, 2010, totaling $147,785.51. (*Id.* ¶ 19.) After graduating law school, he served from February 6, 2011, to March 22, 2015, in the Judge Advocate General's Corps of the U.S. Army. (*Id.* ¶¶ 1, 22.) He then worked for Blue Cross and Blue Shield of North Carolina ("Blue Cross") from January 12, 2015, to May 18, 2018. (*Id.* ¶ 23.) Plaintiff made monthly payments on his student loans pursuant to an Income-Based Repayment Plan from March 7, 2011, until March 7, 2018. (*Id.* ¶ 24.)

Before leaving the Army, Plaintiff called Defendant to ask whether Blue Cross was a qualifying "public services" employer under the PSLF program. (*Id.* ¶ 32.) Defendant informed him that Blue Cross did qualify. (*Id.*) Plaintiff consequently accepted the job offer with Blue Cross and prepared to transition. (*Id.* ¶ 33.) Plaintiff filed his first ECF with Defendant on March 24, 2015, to certify payments he made while in the Army. (*Id.* ¶ 26.) Defendant responded by letter dated April 25, 2015, stating that Plaintiff had "eligible loans" and that the U.S. Army was a "qualifying employer." (*Id.* ¶ 27.) Accordingly, Defendant became the servicer for Plaintiff's loans. (*Id.* ¶ 28.) Plaintiff submitted his second ECF to Defendant on November 17, 2016. (*Id.* ¶ 34.) On December 6, 2016, Defendant responded by letter that Blue Cross was a qualifying employer. (*Id.* ¶ 35.)

However, after another nonprofit organization lost its designation as a qualifying employer, Plaintiff called and emailed Defendant in January 2018 to learn if Blue Cross' designation had also changed. (*Id.* ¶ 39.) Plaintiff alleges he "received different answers every time he called." (*Id.*) Plaintiff then sent a complaint to Defendant's Office of Consumer Advocacy, to which Defendant responded via email on January 26, 2018, that Blue Cross was "no longer a qualifying employer." (*Id.* ¶¶ 42–43.) Plaintiff submitted his third ECF that same day, and on February 14, 2018, Defendant informed Plaintiff that the payments he made after November 17, 2016, would not count toward PSLF forgiveness. (*Id.* ¶¶ 44, 46.) Plaintiff complained to his U.S. Senator, and on February 20, 2018, the Department of Education responded that Plaintiff's ECF "is currently under review." (*Id.* ¶¶ 45, 47.) Defendant then wrote Plaintiff on March 20, 2018 and stated that Blue Cross was not a qualifying employer, and that its December 6, 2016, letter designating Blue Cross as a qualifying employer under

the PSLF program "was issued in error." (*Id.* ¶ 48.) Moreover, the letter stated that Defendant was retroactively "reversing its approval" of all payments Plaintiff made while working at Blue Cross. (*Id.* ¶ 49.)

Plaintiff left Blue Cross in May 2018 for a non-public service job that paid more but did not qualify for PSLF forgiveness and refinanced his loans into a private loan on November 6, 2018. (*Id.* ¶¶ 52–53.) He now owed $169,684.40—nearly $22,000 *more* than he originally borrowed after making regular monthly payments for seven years. (*Id.* ¶ 53.) His new private loan was not a Federal Direct Loan eligible for forgiveness under the PSLF program. (*Id.*) Plaintiff alleges that he would not have left Blue Cross or refinanced his loans but for the change in designation of Blue Cross on March 20, 2018. (*Id.* ¶¶ 52–53.)

On November 1, 2019, Defendant informed Plaintiff that the designation of Blue Cross had again changed. (*Id.* ¶ 54.) Defendant's letter informed Plaintiff that its March 20, 2018, letter that stated Blue Cross was not a qualifying public-service employer was itself "in error," and that Defendant was "reversing our previous assessment of the periods of employment associated with [Blue Cross] and we will evaluate any payments made during such periods of employment as potentially qualifying under the PSLF eligibility criteria." (*Id.* ¶¶ 54–55.) However, Plaintiff alleges that because he refinanced his loans into a private loan, he is ineligible for PSLF forgiveness even if he returned to work for a public service organization and completed his 120 payments. (*Id.* ¶ 56.)

Plaintiff filed this action on January 21, 2021. (*See generally id.*) His Complaint alleges that Defendant knew that Blue Cross was a qualified public-service employer and, therefore, Defendant's March 20, 2018, letter to the contrary was an affirmative misrepresentation. (*Id.*

4

at 2.) In Count I, Plaintiff alleges this misrepresentation constituted an unfair and deceptive trade practice in violation of the UDTPA. (*Id.* ¶ 57–72.) Count II alleges negligent misrepresentation based on the same factual allegation. (*Id.* ¶ 73–87.) Count III alleges that Plaintiff is a third-party beneficiary of the Servicing Agreement between Defendant and the Department of Education, and that Defendant's misrepresentation breached that agreement. (*Id.* ¶ 88–98.) Count IV alleges that the Department of Education partially assigned its rights under Plaintiff's loan agreement with the Department to Defendant, and that Defendant's misrepresentation breached those loan agreements. (*Id.* ¶ 99–109.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) is meant to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In reviewing a 12(b)(6) motion, the court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

5

## III. DISCUSSION

Defendant argues that its motion to dismiss should be granted because: (1) Plaintiff's state law claims are preempted by the Higher Education Act ("HEA"); (2) Plaintiff has not stated a claim under the UDTPA; (3) Defendant did not owe Plaintiff a duty of care sufficient to support a claim for negligent misrepresentation; (4) Plaintiff is not an intended third-party beneficiary of the Servicing Agreement that forms the basis of his first breach of contract claim; and (5) Defendant is not a party to the promissory notes that form the basis of Plaintiff's second breach of contract claim. (ECF No. 9.)

### A. Plaintiff's state law claims are not preempted by the HEA

The Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, invalidates any state law that "interferes with, or is contrary to federal law," *Free v. Bland*, 369 U.S. 663, 666 (1962). While not "rigidly distinct" categories, there are three classes of preemption: express preemption, field preemption, and conflict preemption. *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1901 (2019) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n.6 (2000)). Under express preemption, "Congress expressly declares its intent to preempt state law." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005) (citing *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Field preemption occurs when "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the states to supplement it." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks and citations omitted). Finally, conflict preemption occurs when the state law "actually conflicts with federal law." *Hillsborough*, 471 U.S. at 713. "[T]he purpose of Congress is the ultimate touchstone in every preemption case." *Medtronic, Inc. v.*

6

*Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks and citations omitted). The party who asserts preemption bears the burden to show that was the "clear and manifest purpose of Congress." *See Wyeth v. Levine*, 555 U.S. 555, 565–569 (2009); *see Great-W. Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp.*, 523 F.3d 266, 270 (4th Cir. 2008).

The HEA provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 . . . shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g. The Fourth Circuit has not addressed whether the HEA preempts state law claims that allege affirmative representations by a student loan servicer, and other circuit courts are split on the issue. The majority of circuit courts have held that state law claims alleging affirmative misrepresentations are not preempted by the HEA. *See Pennsylvania v. Navient Corp.*, 967 F.3d 273, 290 (3d Cir. 2020); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 649 (7th Cir. 2019); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 917 (11th Cir. 2020). This is also the position of the Department of Education. Federal Preemption and Joint Federal-State Regulation and Oversight of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 86 Fed. Reg. 44277, 44280 (Aug. 12, 2021) ("Where the States impose conduct requirements prohibiting affirmative misrepresentations by student loan servicers, those measures are not preempted by general disclosure requirements in Federal law."). On the other side, the Ninth Circuit found that similar claims arising under California's Unfair Competition Law were preempted by the HEA. *Chae v. SLM Corp.*, 593 F.3d 936, 947–48 (9th Cir. 2010).

This Court finds the reasoning of the majority of circuit courts to be persuasive and consistent with Fourth Circuit precedent. First, the Court agrees with the majority of circuits that the HEA "does not expressly preempt claims to the extent they are alleging affirmative misrepresentations rather than failures of disclosure." *Navient*, 967 F.3d at 290. The HEA's express preemption of "'disclosure requirements' refers to the HEA's requirements that certain information be communicated to borrowers during the various stages of a loan, as laid out in § 1083 of the statute." *Lawson-Ross*, 955 F.3d at 917. Whether a loan is eligible for forgiveness under PSLF is a required disclosure before disbursement but is not a required disclosure before or during repayment of the loan. *Compare* § 1083(a)(17) *with* §1083(b), (e). Thus, the Court finds that Plaintiff's claims are not expressly preempted by the HEA.

Second, a majority of circuit courts hold that the HEA does not impliedly preempt claims alleging affirmative misrepresentations either. *See Navient*, 967 F.3d at 293 (citing *Lawson-Ross*, 955 F.3d at 920; *Nelson*, 928 F.3d at 648). These courts reason that ""[w]hen Congress has explicitly addressed preemption in a statute, an implication arises that it did not intend to preempt other areas of state law." *Id.* Since the HEA expressly addresses preemption in a number of places, *see* §§ 1078(d) (state usury laws); 1091a(a)(2) (state statutes of limitations); 1091a(b)(2) (state law infancy defense); 1098g (disclosures), it is reasonable to presume that Congress did not intend to preempt state regulation of affirmative misrepresentations, *Navient*, 967 F.3d at 293. The Court finds this reasoning persuasive.

Defendant encourages the Court to follow the Ninth Circuit's reasoning in *Chae*. There, the court determined that "Congress intended to subject [lenders] to uniform federal law and regulations." *Chae*, 593 F.3d at 947. Because a California state "agency's regulations

8

on interest calculation, late fees, and the repayment start date . . . creates an obstacle to the regulations' uniform implementation," the court reasoned, enforcement of those regulations was preempted. *Id.* The Fourth Circuit, however, considering a similar preemption argument was "unable to confirm that the creation of 'uniformity' . . . was actually an important goal of the HEA." *Coll.Loan Corp. v. SLM Corp.*, 396 F.3d 588, 597 (4th Cir. 2005). The Ninth Circuit found *College Loan* unpersuasive, *Chae*, 593 F.3d at 945, but this Court is bound by its holding. And although the Court agrees with Defendant that *College Loan*, which concerned a contract dispute between two lenders, is not on point on the facts of this case, neither is the discussion of state agency regulation of "administrative mechanics" in *Chae*. *See Navient*, 967 F.3d at 293 (holding that "[a]llegations of affirmative misrepresentations and misconduct stand in stark contrast" to the allegations in *Chae*).

Accordingly, this Court finds that Defendant has not met its burden to show it was the "clear and manifest purpose of Congress" to preempt Plaintiff's claims. *See Wyeth*, 555 U.S. at 565–569.

### B. Plaintiff has stated a claim under the UDTPA (Count I)

Defendant next argues that Plaintiff's UDTPA claim fails as a matter of law. (ECF No. 9 at 17.) A UDTPA claim has three elements: "(1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff." *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 600 S.E.2d 492, 500 (N.C. Ct. App. 2004); *see* N.C. Gen. Stat. § 75-1.1(a). Defendant argues that Plaintiff has failed to allege the first element. (ECF No. 9 at 17.) Specifically, it argues that its statement that Blue Cross was not a qualifying public-service employer merely relayed the decision of the Secretary

9

of Education and, therefore, cannot constitute an "unfair or deceptive act or practice" as a matter of law. (*Id.* at 17–18.)

Defendant's argument is premature. As discussed, this Court can only consider the complaint, documents attached to the complaint, and documents attached to the motion that are "integral to the complaint and authentic" in considering a motion to dismiss. *Philips*, 572 F.3d at 180. Here, the Complaint alleges that Defendant "determined that Blue Cross NC was 'no longer a qualifying employer.'" (ECF No. 1 ¶ 43; *see id.* ¶¶ 48, 50, 54.) According to the Complaint, Defendant's November 1, 2019, letter to Plaintiff stated that Defendant was "reversing *our* previous assessment of the periods of employment associated with" Blue Cross. (*Id.* ¶ 55 (emphasis added).) Thus, Plaintiff has adequately alleged that Defendant's representation that Blue Cross was not a qualifying public-service employer was based on its own determination. Defendant may argue in future stages of this litigation that it was in fact the Secretary of Education who disqualified Blue Cross as a public-service employer and that Defendant accurately relayed this determination to Plaintiff. Defendant's bare assertion of this fact, however, does not entitled it to judgment as a matter of law.

As Defendant admits, "the relevant question here is not whether [Blue Cross] qualified under the PSLF program regulation, but whether [Defendant] accurately reported the Department's determination as to whether [Blue Cross] qualified." (ECF No. 12 at 2 n.1.) This is a question of fact. Taking all allegations in the light most favorable to Plaintiff, Defendant did not accurately report Blue Cross's qualification. (*See* ECF No. 1 ¶ 54 (alleging Defendant admitted its disqualification of Blue Cross was "in error"), ¶ 63 (alleging the statutory and regulatory definition of a qualifying employer remained unchanged during the

10

relevant time period), ¶ 75 (alleging Defendant "knew that [Blue Cross] was indeed a 'qualifying employer'")).[1]  Defendant's motion to dismiss Count I of the Complaint will therefore be denied.

## C. Defendant owed Plaintiff a duty of care under North Carolina law (Count II)

Defendant next argues that Plaintiff has failed to allege that Defendant owed Plaintiff a duty of care. (ECF No. 9 at 18.) "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988) ("*Raritan I*").  Whether a defendant owed a plaintiff a duty of care is a question of law for the court. *Davidson v. Univ. of N.C. at Chapel Hill*, 543 S.E.2d 920, 925 (N.C. Ct. App. 2001) (citing *Pinnix v. Toomey*, 87 S.E.2d 893, 897 (N.C. 1955)).

"In an ordinary debtor-creditor transaction, the lender's duties are defined by the loan agreement and do not extend beyond its terms." *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 8 (N.C. 2015).  "[A]ccompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done." *Olympic Prods. Co. v. Roof Sys., Inc.*, 363 S.E.2d 367, 371 (N.C. Ct. App. 1988).  In certain circumstances, this contractual duty may extend to the contract's third-party beneficiaries. *See United Leasing Corp. v. Miller*, 263 S.E.2d 313, 317 (N.C. Ct. App. 1980).

---

[1] The Court does not reach Plaintiff's request that Defendant be judicially estopped from arguing that the Secretary of Education, rather than Defendant, determined that Blue Cross did not qualify as a public-service employer.  (*See* ECF No. 11 at 16–20.)

11

Additionally, "[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence." *Davidson & Jones, Inc. v. Cnty. of New Hanover*, 255 S.E.2d 580, 584 (N.C. Ct. App. 1979) (citing *Council v. Dickerson's, Inc.*, 64 S.E.2d 551 (N.C. 1951)). Thus, a lender who voluntarily undertakes to render services to another may owe a duty to render those services with ordinary care if "the surrounding circumstances are such that the [lender] should recognize the necessity to exercise ordinary care to protect the [borrower] or the [borrower]'s property; and failure to do such will cause the danger of injury to the [borrower] or the [borrower]'s property." *Williams v. Smith*, 561 S.E.2d 921, 923 (N.C. Ct. App. 2002).[2]

Here, as discussed below, Plaintiff adequately alleges that he is an intended third-party beneficiary of the Servicing Agreement. The Servicing Agreement, incorporated by reference in the Complaint and attached as an Exhibit to Defendant's motion,[3] requires that "[t]he servicer shall meet all legislative and regulatory requirements for the Direct Loan program," including by servicing "[p]ublic service loan forgiveness." (ECF No. 8-2 at 63.) Plaintiff alleges that this duty to service PSLF eligible loans includes a duty to process ECFs and inform borrowers of their PSLF eligibility. (ECF No. 1 ¶¶ 14–16); *see* Federal Perkins Loan Program,

---

[2] Under North Carolina law, a defendant may also owe a fiduciary duty to a one who "reposes a special confidence in another, and the other 'in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 8 (N.C. 2015) (quoting *Dallaire v. Bank of Am., N.A.*, 760 S.E.2d 263, 266 (N.C. 2014). Plaintiff has not argued that a student loan servicer owes a borrower a fiduciary duty under North Carolina law, however, and the Court does not reach this issue.

[3] Plaintiff does not dispute the authenticity of the Servicing Agreement, (ECF No. 11), and it may be properly considered by this Court.

12

73 Fed. Reg. at 63241–42. Taking all factual allegations in the light most favorable to Plaintiff, the Complaint adequately alleges that Defendant owed Plaintiff a duty arising from the Servicing Agreement.

Moreover, to the extent that Defendant had no duty to inform Plaintiff of his PSLF eligibility, Defendant assumed that responsibility by voluntarily providing Plaintiff with that information. Based on the allegations in the Complaint, Defendant should have recognized the necessity to exercise ordinary care in telling Plaintiff whether his employer was a qualified public-service employer, since a failure to inform him accurately could induce him to leave his job or refinance his loans.

Defendant has not argued that Plaintiff failed to allege the remaining elements of his negligent misrepresentation claim, and the Court finds that Plaintiff adequately alleged that Defendant breached its duty, Plaintiff justifiably relied on Defendant's representation, and he was injured as a result. Thus, Defendant's motion will be denied as to Count II.

### D. Plaintiff adequately alleged that he is a third-party beneficiary of the Servicing Agreement (Count III)

Defendant next argues that Count III, which alleges breach of the Service Agreement, should be dismissed because Plaintiff is not an intended third-party beneficiary to the contract. (ECF No. 9 at 24.)

"North Carolina recognizes the right of a third-party beneficiary [sic] to sue for breach of a contract executed for his benefit." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 407 S.E.2d 178, 181 (N.C. 1991) ("*Raritan II*") (quoting *Snyder v. Freeman*, 266 S.E.2d 593, 603–04 (N.C. 1980)). "[I]n order to establish a claim based on the third-party beneficiary doctrine, a plaintiff must show: (1) the existence of a contract between two other persons; (2) that the

13

contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Davis & Taft Architecture, P.A. v. DDR-Shadowline, LLC*, 835 S.E.2d 473, 477 (N.C. Ct. App. 2019) (internal citation omitted). "[T]he determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract." *Snyder*, 266 S.E.2d at 604. To ascertain this intent, a court "should consider circumstances surrounding the transaction as well as the actual language of the contract." *Raritan II*, 407 S.E.2d at 182.

Here, Defendants concede that the Service Agreement exists and is valid and enforceable but argue that Plaintiff is not an intended beneficiary. The Servicing Agreement states that "[i]t is the intent of the Department to procure a performance-based contract(s) that promotes competition and provides best of business services. To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction." (ECF No. 8-2 at 30, 48, 62.) It requires Defendant "to meet all statutory and legislative requirements" and deploy "best of business practices." (*Id.*) It provides that the allocation of ongoing volume is determined based in part on borrower satisfaction. (*Id.* at 64–65, 89.) With regard to Federal Direct Loans, it specifically requires that "[t]he servicer shall meet all legislative and regulatory requirements for the Direct Loan program," including by addressing "[p]ublic service loan forgiveness." (*Id.* at 63.) Taking all alleged facts and reasonable inferences in the light most favorable to Plaintiff, this contractual language appears to demonstrate an intent to directly benefit borrowers like Plaintiff by requiring Defendant to provide quality customer service and comply with all federal statutory and regulatory requirements, including the regulations

14

governing the PSLF program. (*See* ECF No. 1 ¶ 91.) The Court takes judicial notice that the PSLF program "is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans after they satisfy the public service and loan payment requirements." 34 C.F.R. § 685.219(a). Thus, Plaintiff has adequately alleged that the Service Agreement was entered into for his direct, and not incidental, benefit. *See generally Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1014–15 (D. Neb. 2019) (finding that a similar student loan servicing agreement's reference to federal regulations and programs demonstrated an intent to directly benefit financially distressed borrowers).

Accordingly, Defendant's motion will be denied as to Plaintiff's claim for breach of the Service Agreement.

### E. Plaintiff adequately alleged that the Department of Education partially assigned its rights under the promissory notes to Defendant (Count IV)

Finally, Defendant argues that Plaintiff's claim for breach of his student loan promissory notes must be dismissed because Defendant is not a party to those promissory notes. (ECF No. 9 at 17.) Plaintiff argues that the Department of Education partially assigned the notes to Defendant, putting Defendant in privity with Plaintiff. (ECF Nos. 1 ¶¶ 100, 102; 11 at 31.)

An assignment occurs when the owner of a right manifests his intent to transfer the right to another. Restatement (First) of Contracts § 149 (Am. L. Inst. 1932); *See Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 534 (N.C. 1973) (adopting the First Restatement's approach to assignments). "Assignments are governed by the general principles of contract law," *Parkersmith Props. v. Johnson*, 525 S.E.2d 491, 495 (N.C. Ct. App. 2000), meaning the court's obligation is "to ascertain the intent of the parties" as manifested in the language of the

15

assignment contract, *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 90 (N.C. 2009). "Intent is derived not from a particular contractual term but from the contract as a whole." *Id.* Construction of a contract "is a factual determination that precludes dismissal on a motion for failure to state a claim" where the contract is ambiguous. *1899 Holdings, LLC v. 1899 Ltd. Liab. Co.*, 568 F. App'x 219, 224 (4th Cir. 2014) (quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992)). "An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Duke Energy Corp. v. Malcom*, 630 S.E.2d 693, 696 (N.C. Ct. App. 2006). In North Carolina, an assignee who assumes duties under an assigned contract may be sued for breach of that contract. *Rose*, 194 S.E.2d at 533–34.

Here, Plaintiff alleges that his student loan promissory notes obligated the Department of Education "to conduct collection activities and otherwise perform student loan servicing activities," and that the Department assigned these duties to Defendant in the Servicing Agreement. (ECF No. 1 ¶¶ 100–02.) Taking the Servicing Agreement as a whole, the Court finds that it is reasonably susceptible to Plaintiff's interpretation. The Servicing Agreement does obligate Defendant to "respond and resolve customer complaints," "provide borrower interest rate discounts and assess late fees," assign delinquent loans for collection, and otherwise service federal student loans, including by addressing "[p]ublic service loan forgiveness." (ECF No. 8-2 at 56, 63.) Plaintiff alleges that Defendant assumed these duties by servicing his loan. (ECF No. 1 ¶ 102.) Thus, at this stage in the litigation, Plaintiff has adequately alleged that the Department's duties to service Plaintiff's loans under his promissory notes were partially assigned to Defendant by the Servicing Agreement. *See also*

16

*Olsen*, 392 F. Supp. 3d at 1017 (holding under Nebraska law at the motion to dismiss stage that a student loan servicer "had an obligation to the plaintiffs resulting from their alleged acceptance of an assignment of the duty to service the plaintiffs' consolidated loans").

Therefore, Defendant's motion will be denied as to Count IV.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (ECF No. 8), is DENIED.

This, the 14th day of March 2022.

/s/ Loretta C. Biggs
United States District Judge