# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TODD BERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV63 |
| | ) | |
| PENNSYLVANIA HIGHER | ) | |
| EDUCATION ASSISTANCE AGENCY | ) | |
| d/b/a FEDLOAN SERVICING, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

In this case, Plaintiff alleged four claims: a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1; a claim for negligent misrepresentation; and two claims for breach of contract. (ECF No. 1 ¶¶ 57–109.) Before the Court is Plaintiff's Motion for Partial Summary Judgment regarding certain elements of these claims pursuant to Fed. R. Civ. P. 56. (ECF No. 27.) Also before the Court is Defendant's cross-motion for summary judgment as to all claims, which is likewise brought pursuant to Fed. R. Civ. P. 56. (ECF No. 31.) For the reasons that follow, the Court will grant Defendant's motion and deny Plaintiff's motion as moot.

## I. BACKGROUND

As previously set out in this Court's order denying Defendant's Motion to Dismiss, this case involves the Public Service Loan Forgiveness ("PSLF") program. (*See* ECF No. 17 at 1–2.) Pursuant to the PSLF program, the U.S. Secretary of Education will "cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan not in default"

for student borrowers who meet certain conditions. 20 U.S.C. § 1087e(m)(1); 34 C.F.R. § 685.219. To obtain this forgiveness, a borrower must, among other things, make 120 monthly loan payments while employed by a qualifying "public service organization." 34 C.F.R. § 685.219(c).

The Department of Education has developed a form that borrowers who believe they qualify for PSLF forgiveness use to apply for that forgiveness. 73 Fed. Reg. 63232, 63241 (Oct. 23, 2008). This form "include[s] an employer certification section and instructions regarding supporting documentation that the Department will need to determine the borrower's eligibility." *Id.* at 63241–42. A borrower "[may] use this form to collect a certification from his or her employer either annually or at the close of the 120-payment qualifying period." *Id.* at 63242. These forms are generally called "Employer Certification Forms" or "ECFs." *See Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 11–13 (D.D.C. 2019) (explaining PSLF statutes and regulations and discussing ECFs).

Additionally, pursuant to 20 U.S.C. § 1087f, the Secretary of Education may "enter into contracts for . . . the servicing and collection of [Federal Direct Loans] . . . [and for] such other aspects of the direct student loan program as the Secretary determines are necessary to ensure the successful operation of the program." It is undisputed in this case that Defendant had such a contract to service Federal Direct Loans, and that at all times relevant to this action that contract included provisions addressing loans that might eventually be cancelled under PSLF. (ECF Nos. 1 ¶¶ 16–18; 38 ¶¶ 16–18.) This contract also included provisions that obligated Defendant to receive and handle ECFs in specified ways. (*See* ECF No. 31-3 at 2–31.) It is also undisputed that prior to the events at issue in this case, Plaintiff obtained two Federal Direct Loans to finance his education, (ECF Nos. 1 ¶ 19; 18 ¶ 19), and these loans

2

were transferred to Defendant for servicing pursuant to its contract with the Department of Education, (ECF Nos. 1 ¶ 28; 18 ¶ 28).

The parties agree that Plaintiff worked for Blue Cross Blue Shield of North Carolina ("BCBS NC") from January 12, 2015, to May 18, 2018, (ECF Nos. 1 ¶ 23; 32 at 9), and that during this period of employment he periodically submitted ECFs to Defendant, (ECF Nos. 1 ¶¶ 34, 44; 32 at 9).  In response to Plaintiff's first ECF, which he submitted in 2016, (ECF No. 31-4), Defendant sent Plaintiff a letter that stated that "[his] employment qualifie[d] [him] for participation in the PSLF Program," (ECF No. 31-7 at 2).  However, after Plaintiff submitted a second ECF in early 2018, (ECF No. 31-5), Defendant sent Plaintiff a letter dated March 20, 2018, that acknowledged the earlier decision but stated "[a]fter further review, and after consulting with the Department of Education, we determined that the [earlier approval] was issued in error because [BCBS NC] does not provide a qualifying service as part of its primary purpose," and that "[a]s a result, we are reversing our approval of the periods of employment associated with [BCBS NC] and revoking credit for any payments made during periods of employment associated with [BCBS NC]," (ECF No. 31-10 at 2).  Over a year later, Defendant sent Plaintiff another letter that stated that the March 2018 letter was "in error," that BCBS NC was a qualifying employer, and that the revoked credit would be reinstated. (ECF No. 31-12 at 2.)

Based on the foregoing events, Plaintiff brought this action alleging that BCBS NC was always a qualifying employer and, therefore, Defendant's March 2018 letter to the contrary was an affirmative misrepresentation.  (ECF No. 1 at 2.)  According to Plaintiff, because of the March 2018 statement that BCBS NC was not a qualifying employer, he left his employment with BCBS NC and consolidated his government loans into a private loan with

3

a principal higher than what he had originally taken out. (*Id.* ¶¶ 52–53.) In his Complaint, Plaintiff alleged four counts. (*Id.* ¶¶ 57–109.) In Count I, he alleged that Defendant's March 2018 communication constituted an unfair and deceptive trade practice in violation of the UDTPA. (*Id.* ¶¶ 57–72.) In Count II, he alleged this March 2018 communication was also a negligent misrepresentation. (*Id.* ¶¶ 73–87.) In Count III, he alleged that he was a third-party beneficiary of Defendant's contract with the Department of Education, and that the March 2018 communication breached that agreement. (*Id.* ¶¶ 88–98.) Finally, in Count IV, he alleged that the Department of Education had partially assigned its rights under his loan agreements to Defendant, and that the March 2018 communication breached those loan agreements. (*Id.* ¶¶ 99–109.)

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court begins with Defendant's motion because Defendant contends that this Court lacks subject matter jurisdiction over all of claims in this case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005) ("[A] federal court must determine that it has subject matter jurisdiction over the case before it can pass on the merits of that case."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Because the Court finds that it does lack subject matter jurisdiction over all claims in this case, the action must be dismissed.

### A. Standard of Review

Although Defendant has styled its motion as one for summary judgment pursuant to Rule 56, the Court addresses Defendant's jurisdictional argument under the standard of review applicable to motions to dismiss made pursuant to Rule 12(b)(1). *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) ("[W]e observe that rather than granting summary judgment

4

pursuant to Rule 56(c), the district court should have dismissed the suit for want of jurisdiction under Rule 12(b)(1) . . . . The differing procedural standards of dismissal under Rule 12(b)(1) and summary judgment under Rule 56(c) are more than academic . . . ."); *see also Polyzen, Inc. v. RadiaDyne, LLC*, No. 14-CV-323, 2017 WL 1167218, at *6 (E.D.N.C. Mar. 28, 2017) ("Proceeding under the Rule 12(b)(1) framework is appropriate even where neither party has brought a motion under it." (citing *Williams*, 50 F.3d at 301–02, 304)), *aff'd*, 726 F. App'x 819 (Fed. Cir. 2018).

Under Rule 12(b)(1), a party may seek dismissal based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) raises the question of "whether [the claimant] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)," and "[i]n ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings." *Williams*, 50 F.3d at 304. "Indeed, 'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549, F.2d 884, 891 (3d Cir. 1977)). A court should grant a motion under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

B.  Discussion

Plaintiff has identified only one communication from Defendant—the March 20, 2018, letter—that he contends made misrepresentations to him and that he relied on to his detriment

thus causing his damages.¹ (ECF Nos. 1 ¶¶ 69, 80, 93, 104.) According to Plaintiff, the misrepresentations made in this letter were that BCBS NC was not a qualifying employer, and that Plaintiff could not receive PSLF credit for the loan payments he made while employed by BCBS NC. (ECF No. 37 at 13.) Defendant argues that it is entitled to derivative sovereign immunity with respect to this letter and its contents because Defendant sent it with the Government's authorization. (ECF No. 32 at 13–16.) If Defendant is correct, this Court lacks jurisdiction over this action in its entirety, as all of Plaintiff's claims are based on his allegation that the representations in the March 2018 letter caused his damages. (ECF No. 1 ¶¶ 69, 80, 93, 104.)

It is well-established that the United States is immune from private civil actions absent a waiver of its sovereign immunity. *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341 (4th Cir. 2014). "[D]erivative sovereign immunity . . . 'protects agents of the sovereign from liability for carrying out the sovereign's will.'" *Id.* at 341–42 (quoting *Al-Quraishi v. Nakhla*, 728 F. Supp. 2d 702, 736 (D. Md. 2010)). "The concept of derivative sovereign immunity stems from the Supreme Court's decision in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940)." *Id.* at 342. The Fourth Circuit has held that "[u]nder *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Id.* Although some courts outside the Fourth Circuit have held that derivative

---

¹ Although Plaintiff presently argues that there are two communications at issue—the March 20, 2018, letter and an earlier January 26, 2018, email, (ECF No. 28 at 7)—Plaintiff's Complaint specifically identifies the March 20 letter and only the March 20 letter as the communication containing the misrepresentations that he relied on and that forms the basis of his four claims, (*see* ECF No. 1 ¶¶ 69, 80, 93, 104). "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Accordingly, only the March 20 letter is at issue here.

6

Case 1:21-cv-00063-LCB-JLW   Document 40   Filed 03/16/23   Page 6 of 16

sovereign immunity is a merits issue rather than jurisdictional, *see, e.g.*, *Adkisson v. Jacobs Eng'g Grp.*, 790 F.3d 641, 646–47 (6th Cir. 2015), the Fourth Circuit treats such immunity as jurisdictional, *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649–51 (4th Cir. 2018).[2]

The Court addresses each prong of the derivative sovereign immunity analysis in turn.

    1.    <u>The Government Authorized the March 20, 2018, Letter</u>

With respect to the first prong, Defendant contends that the Government authorized the March 20, 2018, letter. (ECF No. 32 at 14–15.) To support this contention, Defendant directs the Court to specific language in its contract with the Government that Defendant contends obligated it handle Plaintiff's ECF as it did, as well as to email correspondence between Defendant and representatives of the Department of Education that Defendant contends show that the Government specifically authorized Defendant to send the letter. (*Id.*) According to Defendant, the Government had explicitly told it that BCBS NC was not a qualifying employer, that Plaintiff's payments made while employed by BCBS NC would not count towards PSLF forgiveness, and that Defendant should communicate this to Plaintiff. (*See id.* at 11, 14–15.)

Plaintiff does not dispute that the Government told Defendant that BCBS NC was not a qualifying employer. (*See generally* ECF No. 37.) Instead, Plaintiff responds that Defendant is not entitled to immunity from suit because its contract with the Government obligated it to make independent determinations whether an employer was a qualifying public service

---

[2] Plaintiff argues that this Court should treat derivative sovereign immunity as a merits issue, (ECF No. 37 at 8–11), and cites, alongside cases from the Fifth and Sixth Circuits, the Supreme Court case *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). A reading of *Campbell-Ewald* demonstrates that the question of whether derivative sovereign immunity is a merits or a jurisdictional issue was never put squarely before the Supreme Court, nor did the Supreme Court rule on it. Two years after *Campbell-Ewald*, the Fourth Circuit squarely addressed how to treat derivative sovereign immunity, and the Fourth Circuit reaffirmed its view that it is jurisdictional. *Cunningham*, 888 F.3d at 650. This Court will therefore treat derivative sovereign immunity as a jurisdictional issue.

7

organization, and by merely following the Government's lead with respect to BCBS NC without exercising its own judgment to determine the Government was wrong, it breached that contract. (*Id.* at 13, 16.) Plaintiff also argues that the contract did not authorize Defendant to make misrepresentations to borrowers; thus, if the statements in the March 2018 letter were misrepresentations as Plaintiff contends, then they could not have been authorized by the contract. (*See* ECF No. 37 at 13.)

Having reviewed the parties' arguments and evidence, the Court finds that Defendant's argument is persuasive and Plaintiffs' arguments are not.

The Court begins by assessing what the governing contract between Defendant and the Government required of Defendant and authorized it to do. In undertaking this analysis, the Court focuses on the contract's plain language.[3]

The contract at issue in this case contains several provisions specific to Defendant's obligations with respect to loans that might be forgiven under the PSLF program. (*See* ECF Nos. 31-3 at 2–31; 31-1 ¶ 4 (identifying ECF No. 31-3 at 2–31 as a true and correct copy of the PSLF provisions).) Relevant to the issues here, these provisions include a requirement that Defendant "be able to: . . . [d]etermine that the borrower has made qualifying payments while employed in qualifying public service" when it receives an Employer Certification Form from a borrower. (ECF No. 31-3 at 6.) The contract also contains provisions addressing how

---

[3] Neither party has addressed what body of law governs the interpretation of the contract. The evidence submitted to the Court shows that contract was made between the United States Department of Education, with an address in the District of Columbia, and Defendant, with an address in Pennsylvania. (ECF Nos. 31-2 at 2; 31-3 at 2.) The District of Columbia and Pennsylvania both follow the rule that the unambiguous plain language of a contract governs its interpretation. *Wash. Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 573 (D.C. 2011); *Delaware County v. Delaware Cnty. Prison Emps. Indep. Union*, 713 A.2d 1135, 1137 (Pa. 1998).

8

Defendant should make this determination and what Defendant should do after making it. (*See id.* at 7, 23–27.)

Regarding how Defendant must make the determination, the contract requires that "[Defendant] shall determine whether an employer is a qualifying public service organization, based on the submitted Employment Certification [F]orm." (*Id.* at 7.) The contract also includes a set of "Instructions for Reviewing a PSLF Employment Certification [F]orm." (*Id.* at 23–27.) These instructions contain a section that addresses how Defendant should use the Employment Certification Form to determine if a borrower works for a qualifying employer. (*Id.* at 24–25.) The instructions break employers into three categories: (1) "Federal, State, local or Tribal government organization, agency or entity"; (2) "Non-profit 501(c)(3) organization"; and (3) "Private organization providing public services." (*Id.*) For the first two categories, the instructions state that the Defendant should determine if the employer named on the Employment Certification Form is qualified based on consulting certain lists available on Government websites. (*Id.*) For the last category, which included Plaintiff's employer BCBS NC, the instructions state that Defendant should "escalate to the Department [of Education] for approval."[4] (*Id.* at 25.)

As for what Defendant is contractually obligated to do after going through the above procedures to make a determination regarding an employer's status, the instructions direct Defendant to "[s]end the Borrower a notification of the outcome of the review," and, if the Employment Certification Form was not approved, to "[i]dentify the specific reason the ECF could not be approved." (*Id.* at 26.)

---

[4] The contract also has a provision stating that it is a requirement that "[t]he PSLF servicer shall escalate to [the Office of Federal Student Aid] cases for which a public service organization cannot be determined to be qualifying or non-qualifying, based on the provided validation process." (ECF No. 31-3 at 7.)

9

Plaintiff reads this contract as imposing "[a] requirement that Defendant determine whether an employer is a qualifying public service organization . . . in accordance with federal statutes and regulations that define 'public service organization.'" (ECF No. 37 at 13.) In Plaintiff's view, Defendant must make this determination based on its own independent analysis of the relevant statutes and regulations; while Defendant should consult the Government for advice, the Government's pronouncements whether or not an employer is a qualifying employer are persuasive rather than binding. (*Id.*) To support this interpretation, Plaintiff characterizes the phrase "[Defendant] shall determine whether an employer is a qualifying public service organization," (*id.* at 16 (quoting ECF Nos. 27-3 at 18; 31-3 at 7)), as a "definitive statement placing legal responsibility unambiguously with Defendant alone," (*id.*). Plaintiff also argues that the word "escalate" in the phrase "escalate to the Department" means "to bring awareness to, and to obtain assistance from someone with more resources," and does not imply any relinquishing of decision-making authority. (*Id.* at 17.) Finally, in his brief in support of his Motion for Partial Summary Judgment, Plaintiff argues that a provision in another section of the contract that states that "[Defendant] shall meet all legislative and regulatory requirements for the Direct Loan program," (ECF No. 8-2 at 63 (cited at ECF No. 28 at 17)), also supports his position.

The Court finds that the plain language of the contract does not support Plaintiff's interpretation. The relevant contract provisions do not obligate Defendant to independently interpret federal statutes and regulations concerning whether private organizations providing public services are qualifying employers. Instead, these provisions obligate Defendant to implement the Government's decisions regarding which employers do and do not qualify. The Electronic Certification form instructions regarding private organizations providing public

10

services do not tell Defendant to seek input from the Government and then perform independent regulatory interpretation, rather, they require Defendant to "escalate to the Department *for approval*." (ECF No. 31-3 at 25 (emphasis added).) This language assigns authority to make the ultimate decision whether an employer qualifies to the Government, not to Defendant. The surrounding provisions in the instructions that direct Defendant to simply consult a Government-made list when presented with other kinds of employers bolster this interpretation of the contract. In all cases, Defendant is to defer to the Government's decision regarding whether an employer is a qualifying employer.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff's narrow emphasis on the phrase "[Defendant] shall determine" and Plaintiff's focus on the definition of "escalate" while failing to account for the phrase "*for approval*" violate a basic rule of contract interpretation—a contract must be construed as a whole.[5] Similarly, the statement in the contract that Defendant must meet the legislative and regulatory requirements for the Direct Loan program, (ECF No. 8-2 at 63), does not alter the Court's interpretation of Defendant's obligations as specific provisions take priority over general ones.[6]

Having addressed what the contract obligated and authorized Defendant to do with respect to PSLF loans, Employment Certification Forms, and employer qualification

---

[5] *Binswanger of Pa., Inc. v. TSG Real Estate, LLC*, 217 A.3d 256, 262 (Pa. 2019) ("[T]he entire agreement must be taken into account in determining contractual intent."); *Carlyle Inv. Mgmt., LLC. v. Ace Am. Ins. Co.*, 131 A.3d 886, 895 (D.C. 2016) ("The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms, and ascertaining the meaning in light of all the circumstances surrounding the parties at the time the contract was made." (quoting *Debnam v. Crane Co.*, 976 A.2d 193, 107 (D.C. 2009)).

[6] *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013) ("Moreover, 'we apply a familiar principle of contract interpretation, that specific terms and exact terms are given greater weight than general language.'" (quoting *Washington Auto. Co. v. 1828 L St. Assocs.*, 906 A.2d 869, 880 (D.C. 2006))); *Baltic Dev. Co. v. Jiffy Enters., Inc.*, 416, 257 A.2d 541, 543 (Pa. 1969) ("It is a well known rule of construction that the specific controls the general.").

determinations, the Court now turns to whether the evidence in this case shows that the March 2018 letter was sent in compliance with the contract. The Court finds the letter was sent in compliance with the contract.

The evidence submitted by Defendant shows that nearly a year before the challenged March 20, 2018, letter to Plaintiff, Defendant asked the Government whether Blue Cross Blue Shield of Rhode Island ("BCBS RI") was a qualifying employer. (ECF No. 31-8 at 2.) At the time Defendant asked this question, Defendant was treating this BCBS RI as a qualifying employer because the Government had previously approved it as such. (*Id.*) However, Defendant was concerned that the Government had recently rescinded qualifying employer status for similar organizations and sought guidance regarding BCBS RI. (*Id.*) In response to Defendant's question, the Government replied that it "need[ed] to do a retraction" regarding BCBS RI, and additionally requested that Defendant "comb through those organizations that [the Government had] approved under 'public health' and provide [the Government] a list." (*Id.*) According to a declaration of the employee who received this directive from the Government, "as a result of the [Government's] directive regarding BCBS RI, [Defendant] placed BCBS NC on hold as a qualifying employer pending the Department's directive to issue a retraction." (ECF No. 31-1 ¶ 26.)

The evidence also shows that on February 20, 2018, in response to an inquiry made by Plaintiff, the Government reached out to Defendant via email to request information regarding his account and his employer. (ECF No. 31-9 at 4.) After some additional email correspondence regarding Plaintiff and his employer, the Government told Defendant that Defendant was "approved to retract Blue Cross Blue Shield of North Carolina," and to "send us a copy of the letter to review before mailing." (*Id.* at 2.) This email with the retraction

12

approval was sent on February 22, 2018, that is, approximately a month before Defendant sent Plaintiff the March 20 letter that he claims falsely represented that BCBS NC was not a qualifying employer.

The Court finds that the communications described above demonstrate that at the time that Defendant sent the March 20 letter to Plaintiff, the Government did not consider organizations such as and including BCBS NC to be qualifying employers. Moreover, the February 22 email from the Government explicitly authorized the relevant statements in the March 20 letter—that is, the statements that BCBS NC was not a qualifying employer and the earlier loan payments made by Plaintiff during his BCBS NC employment would not count towards Plaintiff's goal of 120 qualifying loan payments. Indeed, the February 22 email even shows that the Government had a hand in the content of the March 20 letter—which was sent to Plaintiff on joint FedLoan Servicing/United States Department of Education letterhead. (ECF No. 31-10 at 2.) Thus, the March 20 letter—sent pursuant to Defendant's contractual obligation to review Plaintiff's Employer Certification Form, determine whether Plaintiff's employer qualified as a public service organization by escalating the issue to the Government for approval, and then notify Plaintiff of the determination—was authorized by the Government. *See Cunningham*, 888 F.3d at 647–48 (holding that a defendant that placed automated calls to consumers acted with Government authorization because the Government had instructed defendant which numbers to call and had provided a script to use for the calls).

Finally, the Court finds that Plaintiff's remaining argument related to this issue—that Defendant was not authorized to say that BCBS NC was not a qualifying employer because that statement was a misrepresentation and Defendant had no authorization to make misrepresentations, (ECF No. 37 at 12–13)—is unpersuasive. This argument attempts to

13

focus the inquiry on whether the alleged acts were wrongful instead of whether they were authorized. However, derivative sovereign immunity is a jurisdictional issue in the Fourth Circuit, and the Fourth Circuit has observed that "[t]he purpose of *Yearsley* immunity is to prevent a government contractor from facing liability for an alleged violation of law, and thus, it cannot be that an alleged violation of law per se precludes *Yearsley* immunity." *Cunningham*, 888 F.3d at 648–49. Thus, the first prong of the derivative immunity analysis asks only "[whether] the government authorized the contractor's actions." *In re KBR*, 744 F.3d at 342. Here, the evidence shows that the Government directed the specific statements at issue in the March 20 letter—that BCBS NC was not a qualifying employer and prior approval was retracted. Regardless of how these statements are characterized, whether as misrepresentations or mistakes or something else, the Government authorized them.

Accordingly, the Court finds that the first prong of the derivative sovereign immunity analysis is satisfied.[7]

### 2. The Government's Authorization Was Validly Conferred

The second prong of the analysis asks whether "the government validly conferred" the foregoing authorization, "meaning it acted within its constitutional power." *Cunningham*, 888 F.3d at 646 (quoting *In re KBR*, 744 F.3d at 342). This prong does not ask "whether [a defendant's specific act] violated the law, but rather whether Congress had the authority to assign [the defendant] to complete the task." *Cunningham*, 888 F.3d at 648.

---

[7] Plaintiff has also argued that "[a]ssuming *arguendo* that Defendant accurately relayed to [Plaintiff] the [Government's] view that [BCBS NC] was not a qualifying employer, it is not a material fact," as, according to Plaintiff, the Defendant's contract obligated it to independently determine that BCBS NC was still a qualifying employer and to communicate its view to Plaintiff, regardless of the Government's position. (ECF No. 37 at 14–15.) The Court has already addressed and rejected this argument.

14

Defendant argues that this prong is satisfied, (ECF No. 32 at 16), because 20 U.S.C. § 1087f authorizes the Secretary of Education to enter into contracts for "servicing" loans and for "such other aspects of the direct student loan program as the Secretary determines are necessary to ensure the successful operation of the program."

Plaintiff has not offered any argument against this position, and indeed has stated in his brief that "[t]he Department had express statutory authority to contract with Defendant to service federal student loans, which includes [making] employer eligibility determinations" under § 1087f. (ECF No. 37 at 19.)

Having reviewed 20 U.S.C. § 1087f, the Court finds that the second prong of the derivative sovereign immunity analysis is likewise satisfied.

Because the Court has found that the March 20, 2018, letter was sent pursuant to validly conferred Government authorization, Defendant enjoys derivative sovereign immunity from claims predicated on this letter. As all Plaintiff's claims turn on his allegation that this letter misrepresented BCBS NC's status as a qualifying employer for PSLF, this Court therefore lacks subject matter jurisdiction over all claims in this action. Because this Court lacks subject matter jurisdiction over these claims, it must grant Defendant's motion and deny Plaintiff's motion as moot.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant Pennsylvania Higher Education Assistance Agency d/b/a/ FedLoan Servicing's Cross-Motion for Summary Judgment, (ECF No. 31), construed as a Motion to Dismiss for Lack of Jurisdiction, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Todd Berman's Motion for Partial Summary Judgment is **DENIED** as moot.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice.

A Judgment will be filed contemporaneously with this Memorandum Opinion and Order.

This, the 16th day of March 2023.

/s/ Loretta C. Biggs
United States District Judge